FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 10 2014 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

                  Plaintiff,

   -against-

THE TOWN OF OYSTER BAY,
TOWN SUPERVISOR JOHN VENDITTO
in his official capacity, and LONG ISLAND
HOUSING PARTNERSHIP, INC.,

                  Defendants.

---------------------------------------------------------------X

**SETTLEMENT AGREEMENT**

Civil Action No.
CV-14-_____

(_____, J.)
(_____, M.J.)

CV 14 2317
SPATT, J.
WALL, M.

## I. INTRODUCTION

    A.    On April 10, 2014, the United States of America, through the United States Attorney's Office for the Eastern District of New York and the United States Department of Justice Civil Rights Division, filed the complaint in this action against the Town of Oyster Bay (the Town) and Long Island Housing Partnership, Inc. (LIHP) alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, et seq. (the FHA). LIHP is a not-for-profit organization which seeks to "provide increased housing opportunities, throughout Long Island, for those unable to afford decent and safe homes . . . through development, homebuyer education and technical assistance programs and through leadership and public advocacy."

    B.    The complaint alleges that LIHP participated in the implementation and administration of the "Next Generation" housing program created by the Town of Oyster Bay in Nassau County, New York. That program offers zoning incentives

1

      to developers to build affordable housing in the Town for "first time homebuyers." Two Next Generation Housing developments have been built in the Town to date, the Seasons at Plainview and the Seasons at Massapequa. Pursuant to its role as administrator of the Next Generation program, LIHP notified applicants for housing in the two developments that they qualified for first priority for homes if the applicants resided in the Town or were children of Town residents.

C.     The complaint alleges that during the relevant time period, the Town's African-American population was considerably smaller than in the surrounding areas. It also alleges that African-American representation among the pool of eligible Next Generation homebuyers was substantially lower in the Town than in surrounding areas. Indeed, of the winners of the lottery for Next Generation housing at the Seasons at Plainview, 88% were white and none were African-American. At the Seasons at Massapequa, at least 28 of 30 of the Next Generation homes were awarded to white families through the lottery; none of the units were awarded to African-Americans.

D.     The United States alleges in its complaint that the residency preference is discriminatory because it denies African-Americans the opportunity to purchase homes developed under the programs and because it imposes different terms, conditions, or privileges upon African-Americans seeking to purchase homes through those programs.

E.     The parties to this Settlement Agreement, LIHP and the United States, seek to resolve the claims against LIHP in this case without the expense, delays, risks and

uncertainties of litigation. By entering into this Settlement Agreement, LIHP does not admit to the truth of any claims made against it by the United States. Further, nothing in this Settlement Agreement shall be construed as an acknowledgment or admission by the United States that LIHP has acted, or continues to act, in full compliance with the United States Constitution or federal law.

F.  By this Settlement Agreement, LIHP will, in conjunction with its core mission of promoting and developing affordable housing on Long Island, commit its reasonable resources, both time and money, to advance the cause of fair housing on Long Island by, among other things, engaging in fair housing education and outreach, as described below. LIHP represents that it is no longer implementing the residency preference for the Town's Next Generation program and that it has already initiated efforts to engage in fair housing outreach and advocacy activities, and will continue to do so consistent with the terms of this agreement.

## II.  **GENERAL INJUNCTION**

LIHP, its agents, successors, and assigns, and all other persons in active concert or participation with it, are hereby enjoined from:

A.  Making unavailable or denying a dwelling unit to any person because of race; and

B.  Discriminating against any person in the terms, conditions or privileges of renting a dwelling unit, or in the provision of services or facilities in connection therewith, because of race.

3

### III. RESIDENCY PREFERENCES OR REQUIREMENTS

A. Throughout the term of this Settlement Agreement, LIHP will notify every local or state governmental entity or private entity by whom it is asked or to whom it applies to administer a residency preference/requirement of the need to do an analysis of whether such preference discriminates against any category of persons protected under any fair housing statute. Before it administers any residency preferences, LIHP will demand that the local or state governmental entity or private entity (i) conduct an analysis as to whether the policy violates any fair housing law and (ii) obtain a legal opinion confirming that no fair housing law is violated by the preference. If a client of LIHP engages or proposes to engage in a practice which LIHP believes constitutes a fair housing violation, LIHP will advise the client to alter the practice so that it comports with fair housing laws or else LIHP will withdraw from its engagement on the project. In the event LIHP withdraws from its engagement under such circumstances, it shall advise the U.S. Attorney's Office of the practice which may constitute a violation. The source of the information shall be maintained by that office in confidence to the extent that the law allows.

### IV. FAIR HOUSING EDUCATION AND OUTREACH

A. LIHP will undertake to educate consumers, developers, lenders, realtors, public officials, community groups and the general public regarding the requirements of fair housing laws.

B. In furtherance of this effort, LIHP will, within 30 days of the date that this Settlement Agreement is fully executed, designate an individual or individuals

      employed by LIHP to be the Fair Housing Education Coordinator(s) (FHEC(s)). The FHEC(s) shall be responsible for, among other things, maintaining current knowledge regarding fair housing laws, developing or utilizing existing published materials and programs described in this Settlement Agreement, ensuring and documenting compliance with this Settlement Agreement, and providing the United States with semi-annual compliance reports, as described in Section V.A. below.

C. Within 90 days of the execution of this Settlement Agreement, LIHP shall ensure that all its employees have received at least 12 hours of training regarding fair housing laws, with an emphasis on race discrimination, by a trainer approved in advance by the United States. LIHP shall ensure that each trainee executes a certification confirming: i) his or her attendance at the training; and ii) the date of the training. All trainees shall complete the certifications at the conclusion of each training session. Copies of the executed certifications shall be provided to the United States in accordance with Section V.A. below.

D. LIHP will undertake the following program activities at its own expense:

    1. <u>Production of Fair Housing Educational Materials</u>

        a. LIHP will design and produce pamphlets or utilize existing published materials regarding the requirements of and the rights of individuals under fair housing laws, targeted to various groups (e.g., the general public, human and community service workers, public officials, lenders, developers, realtors, the media and local governmental entities). LIHP will work to ensure a wide distribution of these

Case 2:14-cv-02317-GRB-LGD   Document 3   Filed 04/10/14   Page 6 of 14 PageID #: 20

materials throughout Long Island to, among others, clients of LIHP including prospective purchasers who use its services; at programs and seminars in which it participates or which it arranges, including those provided for in this agreement; on its website; and through organizations, businesses and local government entities with which it is affiliated, such as developers, utility companies, stores, religious institutions and banking institutions.

b. LIHP will create templates or use existing published materials for general mailers with basic information and linkage to more in-depth information regarding fair housing laws. Using this template or materials, LIHP will produce mailers for use by other organizations which employ monthly mailing/billing statements and/or newsletters, including banks, utilities, stores, and religious and other organizations. LIHP will develop a list of potential users and contact them with sample materials. The list will be provided to the United States for its review and recommendations for additional entities for LIHP to contact.

c. LIHP will develop PowerPoint presentations and fair housing manuals for use with presentations by LIHP. LIHP will make these materials available for download from the LIHP website.

2. <u>Website Development</u>

LIHP will dedicate a portion of its homepage to promote fair housing, including:

a. a dropdown menu featuring a downloadable Fair Housing pamphlet and PowerPoint presentations;

b. an online Fair Housing Education Course approved by the United States. The course will provide information and education targeted to consumers, developers, lenders, realtors, public officials, and community groups, regarding fair housing laws. The course shall be available in both English and Spanish and where appropriate, any other languages spoken by a substantial number of individuals in LIHP's service area who may benefit from LIHP's services or fair housing education.

c. links to other websites related to fair housing issues, including, but not limited to, the websites of the United States Attorney for the Eastern District of New York, the U.S. Department of Justice Civil Rights Division's Housing and Civil Enforcement Section, the United States Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity, the New York State Division of Human Rights, and national and local fair housing advocacy organizations, including Long Island Housing Services and the National Fair Housing Alliance.

d. consistent with paragraph 5 below, the LIHP website will give consumers, community groups and public officials the ability to request that LIHP provide or arrange for approved fair housing speakers and/or presentations regarding fair housing from a database

of speakers and presentations approved by the United States, and will advertise the availability of speakers on its website as well as by other appropriate methods.

3. <u>Professional Seminars</u>

    LIHP will provide or arrange for two educational seminars per year regarding the requirements of fair housing laws tailored to particular professional groups including: builders, planners, and architects; public officials and local government employees; and lenders and realtors. These seminars, at which LIHP executives and staff as well as outside subject matter experts will address the requirements of and compliance with fair housing laws, will provide comprehensive, current materials and topic-specific resource information.

4. <u>Technical Assistance</u>

    LIHP will be a resource to refer consumers, developers, lenders, realtors, public officials, community groups and the general public to fair housing experts from a database of experts approved by the United States, regarding their obligations under fair housing laws and, in the case of governmental entities, their obligation to affirmatively further fair housing.

5. <u>Community Trainings</u>

    LIHP will provide or arrange for the referral of fair housing speakers and trainers who are approved by the United States. Training will focus on fair housing laws and on how to obtain further assistance and/or report a

complaint. LIHP will conduct at least two community training sessions each year during the three years subsequent to the date of execution by the parties of this Settlement Agreement. LIHP also will provide or arrange for fair housing educational speakers upon request from community groups and organizations. This service will be advertised on the LIHP website and made known through LIHP's extensive network of contacts.

6. Client Education

   a. LIHP will provide fair housing pamphlets approved by the United States in every initial package of information it provides to consumers of its services.

   b. All staff will provide information to individual clients of LIHP who seek mortgage or home buying assistance regarding their fair housing rights, including literature identifying additional sources of information regarding fair housing and how to report violations of fair housing laws.

7. Affirmative Outreach

   LIHP agrees that it will identify and target for outreach African-American communities on Long Island. This will include the following:

   a. advertising its services in publications and other media outlets which are targeted to African-Americans [the list of publications and media outlets will be developed jointly by the parties];

   b. holding at least one of its annual community training sessions in predominantly African-American communities on Long Island; and

      c. ensuring that its mailing lists include individuals and applicants who reside in majority-minority communities in Nassau and Suffolk Counties as well as in the New York City metropolitan area so that the reach in these communities is comparable to majority white communities in those areas to the extent feasible.

8. All materials, including website information, created by or utilized by LIHP in connection with its fair housing efforts detailed herein shall be translated into Spanish and, where appropriate, any other languages spoken by a substantial number of individuals in LIHP's service area who may benefit from LIHP's services or fair housing education.

9. LIHP will provide drafts of all fair housing material required to be developed under this Settlement Agreement, including pamphlets, training materials, seminar materials, and proposed entries on its website, to the United States for review and approval before LIHP employs or distributes them. Such material will be provided to the United States within 30 days of the effective date of this Agreement, or within 30 days of the creation of materials developed subsequently. If the United States does not object to the materials within 30 days of receipt they will be deemed acceptable and in conformity with the requirements of this Agreement. LIHP will also seek approval from the United States for any substantial revisions to those materials or substitutions of materials created by others before distributing or employing the revised materials.

## V.    **COOPERATION WITH THE UNITED STATES**

.   LIHP agrees to cooperate with the United States in connection with litigation of the instant action. Within 30 days of execution by the parties of this agreement, LIHP will provide the United States all documents in LIHP's possession relating to the Town of Oyster Bay's Next Generation housing program and any and all other documents relevant to the instant action, and will comply with all subsequent requests from the United States for documents and information without the need for formal service of process. LIHP agrees to preserve all documents relevant to this action which might be generated at a future date, and to produce them to the United States. LIHP will also make available to the United States all individuals in LIHP's control who may have information relevant to this action LIHP shall provide all materials, reports and information required under this agreement to:

> United States Attorney's Office
> Eastern District of New York
> 271 Cadman Plaza East
> Brooklyn, New York 11201
> Attn: AUSA Michael J. Goldberger

## VI. **GENERAL PROVISIONS**

A. Reporting

LIHP shall, for a three-year period from the date that this Settlement Agreement is fully executed, provide the United States a report every six months of activities it has taken to comply with the requirements of this Settlement Agreement. The report shall include information and documentation demonstrating compliance with each of the terms of this Settlement Agreement, in particular the

requirements of Section III above. The report will also identify any residency preferences that LIHP is administering. The final report required pursuant to this paragraph shall be delivered to the United States no later than sixty (60) days prior to the expiration of the three-year period.

B. <u>Enforcement and Duration of This Settlement Agreement</u>

The United States reserves all legal and equitable remedies available to enforce the provisions of this Settlement Agreement, except as expressly stated herein. The Court shall retain jurisdiction over this matter for the purpose of enforcement of the term of this Settlement Agreement. This agreement shall remain in effect for a period of three years from the date that the parties execute this agreement.

C. <u>Jurisdiction, Venue, Scope</u>

1. The parties stipulate that the Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 3614(a) of the Fair Housing Act and 28 U.S.C. §§ 1331 and 1345. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). In the event that the United States finds that LIHP has violated this Settlement Agreement, it shall, before applying to the District Court for relief, endeavor in good faith to resolve informally with LIHP any differences regarding interpretation of and compliance with this Settlement Agreement. However, if the parties are not able to resolve their differences informally, the United States reserves the right to move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed.

D. **Integration**

This Settlement Agreement constitutes the final, complete, and exclusive agreement and understanding between LIHP and the United States with respect to the settlement embodied in the agreement and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding or promise constitutes any part of this agreement, nor shall it be used in construing the terms of this agreement.

E. The parties agree that, upon the execution of this agreement by all parties, the parties will file a stipulation of dismissal with the Court pursuant to Federal Rule of Civil Procedure 41(a)(2) to dismiss this action against LIHP with prejudice, subject to the right of the United States to seek enforcement of this Settlement Agreement in the District Court.

F. This Settlement Agreement may be signed in counterparts, and its validity shall not be challenged on that basis.

G. Each party shall bear their own costs and fees associated with this case.

FOR THE UNITED STATES:

Dated: April 10, 2014

| | |
|---|---|
| LORETTA E. LYNCH<br>United States Attorney<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, New York 11201<br><br>By: _____<br>MICHAEL J. GOLDBERGER<br>THOMAS A. MCFARLAND<br>Assistant United States Attorneys | ERIC H. HOLDER, JR.<br>Attorney General<br><br>JOCELYN SAMUELS<br>Acting Assistant Attorney General<br><br>_____<br>STEVEN H. ROSENBAUM<br>Chief<br>R. TAMAR HAGLER |

13

(718) 254-6052  
(631) 715-7863

Deputy Chief  
NETA BORSHANSKY  
Trial Attorney  
United States Department of Justice  
Civil Rights Division  
Housing and Civil Enforcement Section  
950 Pennsylvania Avenue, N.W.  
Washington, D.C. 20530  
Phone: (202) 353-0261

FOR LONG ISLAND HOUSING PARTNERSHIP:

L'ABBATE, BALKAN,  
COLAVITA & CONTINI, LLP  
1001 Franklin Avenue  
Garden City, NY 11530

By: _____  
PETER L. CONTINI  
(516) 294-8844

LONG ISLAND HOUSING PARTNERSHIP

By: _____  
PETER ELKOWITZ  
President/ CEO

14