UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                      Plaintiff,

      -against-                                  Civil Action No.
                                                     14-CV-02317 (ADS/SIL)
THE TOWN OF OYSTER BAY and
TOWN SUPERVISOR JOHN VENDITTO,
in his official capacity,
                      Defendants.

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

VANITA GUPTA
Acting Assistant Attorney General

STEVEN H. ROSENBAUM
Chief
R. TAMAR HAGLER
Deputy Chief
BETH FRANK
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

MICHAEL J. GOLDBERGER
THOMAS A. MCFARLAND
Assistant U.S. Attorneys
  (Of Counsel)

**TABLE OF CONTENTS**

BACKGROUND………………………………………………………………………………… 1

ARGUMENT………………………………………………………………………………….. 2

I.      THE COMPLAINT ALLEGES FACTS SUFFICIENT TO SUPPORT A CLAIM OF INTENTIONAL DISCRIMINATION UNDER THE FAIR HOUSING ACT …………………. 2

II.     DISPARATE IMPACT CLAIMS ARE COGNIZABLE IN THIS AND THE TEN OTHER CIRCUITS THAT HAVE CONSIDERED THE ISSUE ……………………………… 3

III.    THE UNITED STATES' COMPLAINT PROPERLY CHALLENGES FACIALLY-NEUTRAL ZONING AND LAND USE PROVISIONS THAT HAVE AN UNLAWFUL DISPARATE IMPACT ……………………………………………………….. 9

CONCLUSION ………………………………………………………………………………… 12

Plaintiff, the United States of America, respectfully submits this memorandum of law in opposition to the motion of Defendants Town of Oyster Bay and Town Supervisor John Venditto to dismiss the Complaint.   This Court already has found that the United States' Complaint alleges facts sufficient to state a viable claim of intentional discrimination under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq.   Mem. of Decision & Order dated December 5, 2014, ECF # 29.   Defendants' motion should be denied on that basis alone.   Additionally, Defendants' demand that this Court ignore decades of Circuit precedent recognizing disparate impact claims is extraordinary and unpersuasive.   The United States' Complaint breaks no new legal ground and falls squarely within decades of FHA jurisprudence of this and every other Circuit.   The Defendants' motion is without merit and should be denied.

## BACKGROUND

The United States filed this action pursuant to its statutory mandate under the Fair Housing Act, 42 U.S.C. § 3614(a), to remedy an alleged pattern or practice of discrimination on the basis of race.   The United States' Complaint alleges that Defendants engaged in a pattern or practice of violating the FHA by making unavailable or denying housing to African Americans through the use of residency preferences under two housing programs, called "Next Generation" and "Golden Age."   The programs, which were designed to encourage construction of below market rate housing for first time homebuyers and senior citizens, give preference to Oyster Bay residents and relatives of Oyster Bay residents.

The Town of Oyster Bay is located in Nassau County, New York, and has a population of nearly 300,000 people, 85% of whom are white.   Compl. ¶¶ 5, 8.   African Americans constitute less than 3% of the town's population.   This is in stark contrast to the town's surrounding and neighboring communities, which are significantly more diverse: Nassau

County's population is 11% African American, nearly four times the proportion in Oyster Bay, and New York City's population is more than 25% African American. Compl. ¶ 9.

Against this backdrop, Defendants adopted and implemented two affordable housing programs under which town residents and children of town residents receive first priority. Compl. ¶ 11. At the time of passage of the Next Generation Program, Defendant Venditto stated that the goal of the Next Generation program was "to keep our children here, keep the generations flowing in the Town," adding that "[b]y providing our young people an opportunity to achieve the personal and financial stability that accompanies homeownership, we are helping ensure that our Town remains the best place to live and raise a family for present and future generations." Compl. ¶ 12. The predictable result of the residency preference is that not a single housing unit of the 58 developed under the Next Generation program went to an African American family and few, if any, of the more than 1,400 units developed under the Golden Age program have been purchased by African Americans. Compl. ¶¶ 21, 24, 26.

## ARGUMENT

### I. THE COMPLAINT ALLEGES FACTS SUFFICIENT TO SUPPORT A CLAIM OF INTENTIONAL DISCRIMINATION UNDER THE FAIR HOUSING ACT

As this Court has found, the United States' Complaint states a viable claim of intentional discrimination under the FHA. Mem. of Decision & Order, ECF # 29. In its ruling denying Defendants' motion for a stay, the Court applied Federal Rule of Civil Procedure 12(b)(6), see id. at 9, and concluded that, "[w]eighing the Plaintiff's allegations in their totality," the United States' complaint alleges facts sufficient to "plausibly state a claim for intentional discrimination." Id. at 9, 12. In so ruling, the Court reviewed the allegations in the Complaint in their entirety, as related to both the Golden Age and Next Generation programs. Because

2

Defendants' motion is based on the mistaken premise that the United States' Complaint does not allege facts supporting a claim of intentional discrimination, their motion should be denied.

## II. DISPARATE IMPACT CLAIMS ARE COGNIZABLE IN THIS AND THE TEN OTHER CIRCUITS THAT HAVE CONSIDERED THE ISSUE

Disparate impact claims under the Fair Housing Act are cognizable in this Circuit, and Defendants' arguments that intervening Supreme Court decisions warrant disregarding decades of precedent from this and nearly (every other) circuit court are extraordinary and unpersuasive. As Defendants acknowledge, the Second Circuit long ago recognized disparate impact claims under the FHA, and has continued to permit such claims to proceed.   See, e.g., Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 575 (2d Cir. 2003); Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, 316 F.3d 357, 366 (2d Cir. 2003); Huntington Branch NAACP v. Town of Huntington, 844 F.2d 926, 934 (2d Cir. 1988); United States v. Starrett City Assocs., 840 F.2d 1096, 1100 (2d Cir.1988); United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1217 (2d Cir. 1987); see also MHANY Mgmt. Inc. v. Incorporated Vill. of Garden City, 985 F.Supp.2d 390, 424-25 (E.D.N.Y. 2013) (J. Spatt).

Intervening Supreme Court cases analyzing different statutes have not abrogated decades of FHA precedent.   Defendants rely heavily on the Supreme Court's decision in Smith v. City of Jackson, 544 U.S. 228 (2005) — not an FHA case — to support their request that this Court ignore decades of precedent recognizing disparate impact claims under the FHA.   Smith held that the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), permitted disparate impact claims, by comparing language in the ADEA to certain language in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").   Smith did not hold either that language identical to the ADEA or Title VII was mandatory to assert disparate impact

3

claims, nor that the ruling applied beyond the ADEA. And Smith has had no effect whatsoever on Second Circuit FHA jurisprudence since it was decided. See, e.g., Smith v. NYCHA, 410 F. App'x 404, 406 (2d Cir. 2011) (disparate impact claims available under FHA); Ungar v. N.Y.C. Hous. Auth., 363 F. App'x 53, 55 (2d Cir. 2010) ("Title VII disparate impact analysis applies also to claims arising under the FHA.").

Nevertheless, Defendants ask this Court to disregard this Circuit's binding precedent based solely on Defendants' speculation about the implications of Smith and other cases interpreting statutes other than the FHA. Def. Mem. at 5, 14-17. To adopt Defendants' argument would be legal error. "The Supreme Court has repeatedly stated that the Circuit Courts are to apply the law as it exists, unless it is expressly overruled." Ognibene v. Parkes, 671 F.3d 174, 184 (2d Cir. 2011). Unless and until the Supreme Court or the Second Circuit sitting en banc holds otherwise, disparate impact claims are cognizable under the FHA in this Circuit.

Defendants' contention that Smith has effectively overruled this precedent sub silentio is further belied by the facts. Def. Mem. at 14. Prior to Smith, ten other circuit courts agreed with the Second Circuit that the FHA authorizes disparate impact claims. See Langlois v. Abington Hous. Auth., 207 F.3d 43, 49 (1st Cir. 2000); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 146 (3d Cir. 1977); Smith v. Town of Clarkton, 682 F.2d 1055, 1065 (4th Cir. 1982); Hanson v. Veterans Admin., 800 F.2d 1381, 1386 (5th Cir. 1986); Arthur v. City of Toledo, 782 F.2d 565, 574–75 (6th Cir. 1986); Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights, 558 F.2d 1283, 1290 (7th Cir. 1977); United States v. City of Black Jack, 508 F.2d 1179, 1184–85 (8th Cir. 1974); Halet v. Wend Inv. Co., 672 F.2d 1305, 1311 (9th Cir. 1982); Mountain Side Mobile Estates P'ship v. Sec'y, HUD, 56 F.3d 1243, 1251 (10th Cir. 1995); United States v.

4

Marengo Cnty. Comm'n, 731 F.2d 1546, 1559 n.20 (11th Cir. 1984). Only the D.C. Circuit has not decided the issue. See Greater New Orleans Fair Hous. Action Ctr. v. HUD, 639 F.3d 1078, 1085 (D.C. Cir. 2011). No court of appeals has revisited this issue, much less overruled or repudiated its prior decisions, in light of Smith. To the contrary, the circuit courts have repeatedly affirmed, after Smith, that the FHA permits disparate impact claims. See Mt. Holly Gardens Citizens in Action v. Township of Mount Holly, 658 F.3d 375, 381 (3d Cir. 2011) ("The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class."), cert. petition that was subsequently withdrawn and certiorari dismissed, see 134 S. Ct. 636 (2013); Astralis Condo. Ass'n v. Sec'y, HUD, 620 F.3d 62, 66 (1st Cir. 2010) (recognizing disparate impact claim under FHA); Graoch Assocs. v. Louisville / Jefferson Cnty. Metro Human Relations Comm'n, 508 F.3d 366, 371–74 (6th Cir. 2007) (setting standard for FHA disparate impact claim); Reinhart v. Lincoln Cnty., 482 F.3d 1225, 1229 (10th Cir. 2007) (FHA disparate impact claim need not prove intent); Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1194–95 (9th Cir. 2006) (standard for FHA disparate impact claim).

District courts that have considered Defendants' argument also have rejected it. See, e.g., Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co., 573 F. Supp. 2d 70, 78-79 (D.D.C. 2008) ("[T]he Court finds that Smith does not preclude disparate impact claims pursuant to the FHA."); NAACP v. Ameriquest Mortg. Co., 635 F. Supp. 2d 1096, 1104-05 (C.D. Cal. 2009) ("Smith does not address FHA . . . claims at all."); Barrett v. H&R Block, Inc., 652 F. Supp. 2d 104, 108-09 (D. Mass. 2009); Ramirez v. GreenPoint Mortg. Funding, Inc., 633 F. Supp. 2d 922, 926–27 (N.D. Cal. 2008); Hoffman v. Option One Mortg. Corp., 589 F. Supp. 2d 1009, 1010-11 (N.D. Ill. 2008); Taylor v. Accredited Home Lenders, Inc., 580 F. Supp. 2d 1062, 1066-67 (S.D. Cal. 2008), but see, AIA v. HUD, 2014 WL 5702711, at

*17 (D.D.C. November 3, 2014) (finding HUD's disparate impact regulations invalid because the "FHA prohibits only intentional discrimination").

First, these cases hold that Smith does not apply beyond the ADEA or extend to the FHA. See, e.g., Ameriquest Mortg. Co., 635 F. Supp. 2d at 1104-; Zamudio v. HSBC N. Am. Holdings Inc., No. 07 C 4315, 2008 WL 517138, at *2 (N.D. Ill. Feb. 20, 2008). Second, courts have reasoned that the text of the FHA supports disparate impact liability, even under Smith's analysis of the ADEA. See, e.g., NCRC, 573 F. Supp. 2d at 78. Third, they reject Defendants' argument that Smith requires that a statute contain talismanic words to permit disparate impact liability. Barrett, 652 F. Supp. 2d at 109 ("Smith . . . does not require 'adverse effects' language as a necessary prerequisite to allowing disparate impact liability"). Fourth, they note that had the Supreme Court intended to erase decades of FHA precedent, it would have said so expressly. See, e.g., Guerra v. GMAC LLC, No. 2:08-cv-01297-LDD, 2009 WL 449153, at *3 (E.D. Pa. Feb. 20, 2009) (lower courts should follow precedent unless Supreme Court clearly requires a different result). Fifth, they recognize that the legislative history of the FHA, including its 1988 amendments, confirm that Congress intended disparate impact claims to be cognizable under the FHA. See, e.g., NCRC, 573 F. Supp. 2d at 77–78. Indeed, when it amended the FHA in 1988, Congress was aware that the circuits consistently concluded that the FHA permitted disparate impact claims. See Fair Housing Amendments Act of 1987: Hearings Before the Subcomm. on the Constitution of the S. Comm. of the Judiciary, 100th Cong., 1st Sess., at 529-57 (1987) (testimony of Prof. Robert Schwemm). Congress enacted the FHA amendments without any change to the provisions interpreted as allowing disparate impact claims, thus endorsing this case law. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and

6

to adopt that interpretation when it re-enacts a statute without change."). Finally, courts rejecting the argument that Smith upends FHA precedent defer to the long-standing agency interpretation of HUD, which recognizes disparate impact liability and which has recently been adopted as a formal rule. See, e.g., NCRC, 573 F. Supp. 2d at 78; see Implementation Of The Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460, 11,481-11,482 (Feb. 15, 2013). For the same reasons that led over a dozen courts to reject Defendants' arguments, this Court should deny their motion. See also, Brief for the United States as Amicus Curiae Supporting Respondents, Twp. of Mt. Holly, N.J. v. Mt. Holly Gardens Citizens in Action, Inc., No. 11-1507 (U.S. filed October 28, 2013), 2013 WL 5798699 (setting forth the basis for continued disparate impact liability under the FHA).

      Moreover, Defendants are wrong that intervening Supreme Court decisions, including Smith, undermined circuit precedent by repudiating the approach in Griggs v. Duke Power Co., 401 U.S. 424 (1971), which relied on the purpose and history of Title VII to conclude that disparate impact liability arose under that statute. Def. Mem. at 15, 16. Smith does not demand an analysis focused on text to the exclusion of congressional intent and other factors. To the contrary, the Smith plurality expressly stated that its holding was based on the history, purpose, and agency interpretation of the ADEA. Smith, 544 U.S. at 238 ("As we have already explained, we think the history of the enactment of the ADEA . . . supports the . . . consensus concerning disparate impact liability"); id. at 239–40 (considering the statutory text and the agency's regulations to conclude disparate impact claims were cognizable). To be sure, the Smith plurality concluded that Section 4(a)(2) of the ADEA is consistent with disparate impact liability because, like Section 703(a)(2) of Title VII in Griggs, it "focuses on the effects of the action on the employee rather than the motivation for the action of the employer." Id. at

7

235–36 (plurality). But the Smith Court never suggested that the specific language in Section 4(a)(2) was a statutory prerequisite for disparate impact claims, and therefore did not repudiate the approach of the Second Circuit in Town of Huntington.

Finally, Defendants speculate that the Supreme Court's recent grants of certiorari in two cases demonstrate that the issue is not fully settled. See Def. Mem. at 17; Twp. of Mt. Holly, N.J. v. Mt. Holly Gardens Citizens in Action, Inc., 133 S. Ct. 2824, cert. dismissed, 134 S. Ct. 636 (2013); Magner v. Gallagher, 132 S. Ct. 548 (2011), cert. dismissed, 132 S. Ct. 1306 (U.S. Feb. 14, 2012). Defendants suggest that the Court was signaling an intention to limit disparate impact claims, and that this Court thus ought to "freshly consider" the issue. In fact, the Supreme Court has warned against predicting how it would rule based on a grant of certiorari. See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 25, 27 (1994), (refusing to vacate the lower court's decision once the case settled, and rejecting the argument that the grant of certiorari predicted a reversal.) Defendants' speculation is no basis for any court to overturn decades of settled precedent. Unless and until the Supreme Court expressly rules that disparate impact claims are not cognizable under the FHA, this Court is bound by the law as it now exists in the Second Circuit. Ognibene, 671 F.3d at 184.

### III. THE UNITED STATES' COMPLAINT PROPERLY CHALLENGES FACIALLY-NEUTRAL ZONING AND LAND USE PROVISIONS THAT HAVE AN UNLAWFUL DISPARATE IMPACT

Defendants present the Court with a parade of alleged horribles they charge would result from recognizing the United States' disparate impact claim in this case. Defendants' concerns are overblown and misplaced. The United States' Complaint does not ignore the diverse range of demographics present in communities across the county. See Def. Mem. at 21. Rather, the Complaint is based on the facts relevant to the Town of Oyster Bay, its surrounding

8

communities, and the particularized impact of the programs at issue. Most blatantly, Defendants repeatedly mischaracterize the United States' claims and desired remedy. Defendants suggest that the United States alleges that "demographic differences" themselves "constitute" discrimination. That is, of course, not what the Complaint alleges. Rather, it challenges the implementation of residency preferences in specific affordable housing programs, with particular eligibility requirements, in a town that has a substantially and significantly lower African American population than the immediate surrounding region.

The aim of the Complaint is not an "ideally balanced population" nor any manner of "racial balancing." (Indeed, some of Defendants' musings are fanciful – including their suggestion that under the United States' theory, offers of occupancy "would need to be rescinded once it became apparent that not enough African Americans received offers." Def. Mem. at 23. Nothing in the Complaint supports this alarmist contention.) The Complaint seeks to enjoin the application of residency preferences that have an unjustified disparate impact on African Americans, not to require that a specified number of housing units be awarded to African Americans or that Defendants somehow otherwise achieve an undefined "balance" of African-American and white residents. When read as pled, the United States' Complaint is well within established FHA principles and neither far-reaching nor groundbreaking. The Complaint challenges the unlawful disparate impact of a facially-neutral land-use provision; that is precisely the kind of disparate impact claim courts have permitted for decades. Cf. City of Black Jack, 508 F.2d at 1186 (ruling city ordinance barring all new apartment buildings violated the FHA where it would block integrated complex in a nearly all-white suburb); Metro. Hous. Dev. Corp., 558 F.2d at 1285 (holding zoning policy excluding low-cost housing within the jurisdiction violated the FHA); Daveri Dev. Grp., LLC v. Vill. of Wheeling, No. 12-C-7419, 2013 WL

9

1182847, at *11-14 (N.D. Ill. Mar. 21, 2013) (holding that an ordinance that excluded social services facilities from residential zones had a potential disparate impact on people with mental disabilities who required such supportive housing); United States v. Hous. Auth. of Chicksaw, 504 F.Supp. 716 (S.D. Al. 1980) (invalidating a residency preference under the FHA based on finding of disparate impact where the requirement had a greater adverse impact on African Americans than on whites and had the effect of excluding all non-whites).

Defendants' reliance on the First Circuit's decision in Langlois, 207 F.3d 43 (1st Cir. 2000), is misplaced. Indeed, the residency preference at issue in Langlois ultimately was struck down on remand. At issue in Langlois was the use of a residency preference by certain public housing authorities (PHAs) in their implementation of the Section 8 housing choice voucher program. The First Circuit, having been satisfied by the likelihood of plaintiffs' prima facie showing of disparate impact, turned to the question of the lower court's resolution of the defendants' proffered justification. Id. at 50. The court rejected the district court's balancing analysis, focusing instead on the fact that defendants were PHAs implementing the Section 8 voucher program and that Congress itself had endorsed the use of preferences in distributing vouchers. Thus, the court concluded that the residency preference at issue "does not violate the 'because of race' provision of the Fair Housing Act *standing alone*." Id. at 51 (emphasis added). (Oyster Bay's residency preferences, notably, are not related to the Section 8 vouchers program.) On remand, the district court found that the combination of local residency preferences and severe racial differences between the localities administering the Section 8 Housing program and nearby Boston, created a discriminatory racial impact in minority access to housing opportunities. See Langlois v. Abington Hous. Auth., 234 F.Supp.2d 33, 66 (D. Mass. 2002). The district court went on to strike down the residency preferences. Id. at 68; see also

Comer, 37 F.3d at 795. Although the district court ruled on different grounds (finding that the PHAs failed to affirmatively further fair housing), it made clear that there were circumstances under which residency preferences could violate the antidiscrimination provisions of the FHA. See Langlois, 234 F.Supp.2d at 66 and n.37. Certainly, neither the First Circuit's nor the district court's decisions in Langlois stands for the proposition that residency preferences *never* violate the FHA.

Neither the district court's final ruling in Langlois more than a decade ago, nor the numerous other decisions by federal courts, discussed above, finding disparate impact liability in municipal zoning, have "open[ed] a proverbial Pandora's box." Def. Mem. at 19. The allegations in the United States' Complaint neither seek "racial balancing" nor require a unique application of disparate impact liability. Defendants' motion should be denied.

11

## CONCLUSION

For the reasons set forth in this memorandum, the Court should deny Defendants' motion.

Dated: Brooklyn, New York
       December 12, 2014

| | |
|---|---|
| VANITA GUPTA<br>Acting Assistant Attorney General | LORETTA E. LYNCH<br>United States Attorney<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, New York 11201 |
| _____/s/_____<br>STEVEN H. ROSENBAUM<br>Chief<br>R. TAMAR HAGLER<br>Deputy Chief<br>BETH FRANK<br>Trial Attorney<br>United States Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br>Phone: (202) 305-8196<br>Fax: (202) 514-1116<br>E-mail: Beth.Frank@usdoj.gov | By:   _____/s/_____<br>MICHAEL J. GOLDBERGER<br>THOMAS A. MCFARLAND<br>Assistant U.S. Attorneys<br>(718) 254-6052/ (631) 715-7863<br>Michael.Goldberger@usdoj.gov<br>Thomas.McFarland@usdoj.gov<br>(Of Counsel) |