

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 15, 2021

**BY ECF**
Honorable Steven I. Locke
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    *United States of America v. the Town of Oyster Bay, et ano.*
               Civil. Action No. CV-14-2317 (Brown, J.) (Locke, M.J.)

Dear Judge Locke:

       This Office represents the United States in this Fair Housing Act litigation against the Town of Oyster Bay (the Town) and Town Supervisor Joseph Saladino, in his official capacity. Pursuant to the Court's January 28, 2021 order, as amended by the order dated April 6, the United States respectfully requests that the Court issue an order compelling certain depositions of Town officials and former attorneys for the Town, and for additional outstanding discovery, for the reasons that follow.

       As set forth in the complaint, two Town housing programs violate the FHA and perpetuate segregation in the Town because the programs contain preferences for Town residents and their families. On December 22, 2020, following the cessation of the most recent round of settlement discussions, the Government served on Defendants a letter summarizing the outstanding discovery in this matter. The United States requested, among other things, that Defendants produce certain Town officials for depositions (the "Town Officials"). The Government also noted that it intended to seek the depositions of a number of former attorneys employed or retained by the Town (the "Town Attorneys"). As discussed further below, the testimony of these witnesses is material and necessary to the prosecution of the Government's claims.

       In January 2021, the parties met and conferred regarding the Government's requests, and the Town informed the Government that it objected not only to the Town Attorney depositions, but to *any* further depositions in this case.

    **A. Depositions of the Town Officials**

       The Government has long made known its intention to take the depositions of current and former Town Council members, and other officials and consultants, that may have knowledge related to the creation of the housing programs at issue, as well as the programs' administration since then. *See, e.g.*, Dkt. No. 67. Due to the long span of time since the creation of the Golden Age Housing Program (Golden Age) (approximately 30 years) and the Next Generation Housing Program (Next Generation) (over 15 years), numerous individuals have been responsible for conceptualizing, promoting, structuring and administering the programs. Thus, the scope of discovery required here (including depositions) is necessarily broad. Notwithstanding this fact, the

Town opposes the depositions of the Town Officials merely because of the number of depositions already taken (15), as well as its attorneys' unsupported representation that the witnesses noticed by the United States purportedly have no relevant information. The Town's opposition is similar to its objections in 2016, when it opposed the Government's request to take depositions "in excess of the presumptive 10-deposition limit." Dkt. No. 68 at 1. In ruling on the last motion on the subject of depositions, the Court rejected the Town's argument that additional depositions would be cumulative and duplicative, holding:

> This is a case concerning two municipal housing programs enacted over a decade apart. Accordingly, there was decision-making by two sets of Town councils, each relying on Town employees, agents, consultants and attorneys. Once each program was approved by the Town, it had to be implemented and administered. Accordingly, and contrary to Defendants' characterization, the Court does not view this case as "straightforward."

Order dated May 10, 2016 (2016 Order) at 3, Dkt. No. 73. The Court ordered the depositions noticed by the Government to proceed.

As in 2016, Defendants object to the number of depositions of Town Officials noticed (eight), but unlike last time, Defendants now also have explicitly lodged a relevance objection to the testimony sought. *Cf.* 2016 Order at 4 ("Defendants do not object to any of these depositions on relevance grounds . . . the discovery at issue is conceded to be relevant"). Then, as now, however, Defendants' opposition is undermined by their failure to explain why, in a complex discrimination case such as this, the Government should not be permitted to obtain relevant, important information. *See id*. Specifically, the Government seeks the depositions of Town Supervisor Joseph Saladino, current Town Council members Michele Johnson, Louis Imbroto, Thomas Hand, Laura Maier, Vicki Walsh, Town Clerk Richard LaMarca, and the current administrator of Golden Age and Next Generation. The depositions of the Town Officials are needed to get a clear understanding of the administration of the programs now, five (5) years after this litigation was interrupted by the criminal indictment and prosecution in state and federal court, of former defendant and former Town Supervisor John Venditto. Among other things, the United States seeks to learn about the Town's rationale and motivations for maintaining the challenged residency preference system and the witnesses' knowledge of past rationales and motivations, and to discover the contents of any conversations, meetings and planning undertaken in the half-decade since the last series of depositions.

The United States is entitled to the depositions because they are relevant and proportional to the needs of the case, considering the importance of the issues at stake in the action. Fed. R. Civ. P. 26(b)(1). Indeed, as this Court has previously recognized, the Supreme Court has described the commitment toward creating an integrated society, and therefore the country's commitment to eradicating housing discrimination, as "historic." 2016 Order at 4 (quoting *Texas Dep't of Housing & Community Affairs, v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2525 (2015)). Defendants' failure to offer anything more than a conclusory statement in response that they believe the testimony sought to be irrelevant demonstrates the emptiness of their position.

    **B. Depositions of the Town Attorneys**

The United States also seeks an order compelling the depositions of certain current and

former Town attorneys, including Leonard Genova and attorneys from the law firm of Berkman, Henoch, Peterson, Peddy & Fenchel, P.C. (Berkman Henoch). These depositions are needed for the limited purpose of learning how Berkman Henoch came to draft an opinion letter regarding the legality of the residency preferences in the Next Generation program.

The Government first sought an order regarding Town attorney depositions as part of its plenary motion for depositions in 2016; that portion of its motion was denied without prejudice to renewal upon further briefing by the parties to determine whether any privilege precluded these depositions. *See* 2016 Order at 5. The Government's motion is now ripe and should be granted for two reasons. First the information sought is material, necessary, and cannot be obtained from other sources. Second, the Town waived attorney-client privilege regarding the subject matter of the letters and communications regarding the letters by voluntarily and intentionally disclosing to the Government both final and draft legal opinions provided by the Berkman Henoch attorneys.

Where a party seeks to compel potentially privileged testimony or documents, a motion to compel may be granted on a showing that the information sought is "highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other sources." *Gonzales v. Nat'l Broadcasting Co. Inc.*, 194 F.3d 29, 33 (2d Cir. 1999) (quoting *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982)). The Government's request meets all of the required elements.

The information sought is material and necessary to the Government's case. The draft opinion letter dated October 1, 2004 provided an in-depth analysis and suggested that the Next Generation residency preferences may violate the Fair Housing Act. The final version of the letter was significantly shorter and stated in conclusory terms that, "as drafted," the residency preferences were legal. The discovery the United States seeks from the Town's attorneys relates to the reasons for the differences between the two letters and goes to the issue of intent to discriminate. Moreover, the need for the information, which is critical to the United States' claim of discriminatory intent, outweighs any potential adverse effects on the attorney-client privilege because the attorneys who would give testimony and produce documents no longer work with or for the Town.

The Town has clearly waived attorney-client privilege regarding the subject matter of these letters and any communications about them. The Town intentionally produced the opinion letters in response to the Government's pre-suit investigation requests regarding "the Town's justification for the programs' residency requirement." Specifically, the Town produced Berkman Henoch's files regarding Next Generation, including a draft opinion letter dated October 1, 2004, and a final version of the opinion letter dated October 4, 2004. This was not an inadvertent or accidental disclosure. In response to the United States' request, the then–Chief Counsel to the Town Supervisor provided written instructions that LaRusso & Conway, the Town's then-outside counsel, review and transmit both opinion letters to the United States. In fact, the instruction letter to LaRusso & Conway specifically identified both the October 1 draft and October 4 final opinion letter as two items in a four-item list of documents to be produced. *See* Exh. 1 (Town-La Russo correspondence). LaRusso & Conway complied with the Town's request to disclose these documents. *See id*. Accordingly, the Town has waived attorney-client privilege with respect to the opinion letters themselves.

But the waiver extends beyond the documents. The Federal Rules of Evidence provide that

[w]hen [a] disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

(1) the waiver is intentional;
(2) the disclosed and undisclosed communications or information concern the same subject matter; and
(3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). The Advisory Committee notes to Rule 502 further provide that "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner." The first and second prong are easily established here: As discussed above, the waiver was intentional; and the information now sought by the Government concerns the same subject matter as the documents intentionally produced— communications between the Town and its attorneys regarding the Town's understanding of the legality of the Next Generation residency preferences as set forth in the 2004 Letters.

The Government's request also satisfies the third prong of Rule 502. It is well established that a party cannot fairly wield privileged information as a sword in support of its arguments only to then raise that privilege as a shield when other parties seek to further scrutinize the underlying information. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). When it produced the 2004 Letters in response to the Government's request during its pre-suit investigation to provide a rationale for its residency preference, the Town sought to gain the benefit of having relied on its attorney's legal advice; it was an attempt to demonstrate that the Town did not have an intent to discriminate. The Town now cannot assert privilege in order to prevent the Government from discovering the full context in which the opinions were requested and offered. *See In re Grand Jury Proceedings*, 219 F.3d at 182 ("The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received.") (internal quotation marks and citations omitted).

Finally, the information cannot be obtained from other sources. The Town's current attorneys have repeatedly refused to voluntarily produce witnesses or information that can speak to the 2004 Letters. Further, not one of the dozen Town officials deposed thus far admitted any knowledge of the 2004 Letters or their creation. These deponents included Elizabeth Maccarone, the Deputy Director of Planning for the Town, who submitted the draft legislation that established Next Generation program to the Town Council together with a memorandum that stated that "[t]he town's attorneys, special counsel [Berkman Henoch] has reviewed the draft document and will be providing us with a legal opinion on the proposed local law." Notwithstanding, during her deposition Ms. Maccarone denied any knowledge of her memorandum. *See* Maccarone Dep. Tr. 57; 1-4, annexed as Exh. 2. When forced to admit that she had signed the memo, *id.* 5-6, she denied any understanding of Berkman Henoch's role in the letters her memo described. *Id.* at 58; 10-12.

Likewise, Harold Mayer, the Town's planning consultant, admitted to attending meetings regarding Next Generation with attorneys employed by the Town, Berkman Henoch and attorneys from Long Island Housing Partnership. *See* Mayer Dep. Tr. 53; 1-5, annexed as Exh. 3. Mr. Mayer initially admitted that these legal issues included those raised by the residency preferences but claimed that he could not discuss the issue further as these discussions were subject to attorney-client privilege. *Id.* at 54-55. Mr. Mayer then denied any recollection of discussing residency preferences. *Id.* at 55.

Despite voting to retain Berkman Henoch for the purpose of preparing a legal opinion regarding Next Generation, Town Councilmember Rose Walker also denied any recollection of the 2004 Letters. *See* Walker Dep. Tr. 88, annexed as Exh. 4. And the person most instrumental in the design of the Next Generation program, Town Supervisor, John Venditto, died last year, before the Government was able to depose him.

### C. Other Outstanding Discovery

Finally, the United States respectfully requests that the Court direct the Town's witnesses to provide responses to certain questions the Town's attorneys prevented the witnesses from answering at their depositions. Specifically: 1) Town Councilmember Lewis Yevoli was prevented from answering whether the Town Board had discussed the discriminatory impact caused by Golden Age. *See* Yevoli Dep. Tr. 35-36, annexed as Exh. 5; 2) Mr. Mayer was prevented from disclosing any communications with Town attorneys regarding the housing programs, or regarding any consideration given by the Town Council to issues of housing "density" and the Town "environment" and Mr. Mayer's understanding of the terms "preference" and "priority." *See* Exh. 3 at 43-46; 3) Mr. Portman was prevented from disclosing any documents he reviewed. *See* Portman Dep. Tr. 11-12, annexed as Exh. 6; 4) Town Councilmember Anthony Macagnone was prevented from testifying regarding his knowledge of the grounds for the lawsuit and attempts at resolution. *See* Macagnone Dep. Tr. 102-08, annexed as Exh. 7. None of the responses to the questions posed by the undersigned are protected by any privileges, and the witnesses should be compelled to respond to these questions.[1]

---

[1] For the sake of completeness, and so as not to waive its right to obtain this discovery at a later juncture, the Government notes that it has raised with the Town's attorneys five-year-old discovery requests made during depositions of the Town's witnesses. Specifically, the United States requested: 1) at the deposition of Gloria Hobbs, the identity of the one African American applicant who Ms. Hobbs believes obtained a unit at The Oaks development; and the list maintained by the Town showing how many units were awarded to Town residents versus out of Town residents; 2) at the deposition of Elizabeth Maccarone, e-mails between Ms. Maccarone and Town consultant David Portman; 3) and at the deposition of Town consultant David Schiff, Mr. Schiff's files on the study for which he was commissioned. Though the Town has never objected to the production of this information, it has failed to produce it. We have only recently brought these old requests to the Town's attention, and its attorneys have committed to considering them and conferring with undersigned counsel in the near future. The parties agree that, as the Town has not yet taken a definitive position, this issue is not yet ripe.

We thank the Court for its consideration of these requests.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By: _____/s/_____

Michael J. Goldberger
Sean P. Greene-Delgado
Assistant U.S. Attorneys
(718) 254-6052/6484
michael.goldberger@usdoj.gov
sean.greene@usdoj.gov

cc: All counsel of record (by ECF)